## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-CA-01944-SCT

*DENNIS EARL TOWNES*

*v.*

*NAY RUTH MANYFIELD AND B. L. MANYFIELD*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/30/2002 |
| TRIAL JUDGE: | HON. WILLIAM HALE SINGLETARY |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | JAMES D. MINOR, SR. |
| ATTORNEY FOR APPELLEES: | BARBARA A. BLUNTSON |
| NATURE OF THE CASE: | CIVIL - CUSTODY |
| DISPOSITION: | VACATED AND REMANDED - 09/30/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE COBB, P.J., DICKINSON AND RANDOLPH, JJ.**

**DICKINSON, JUSTICE, FOR THE COURT:**

¶1.     This is a case involving the visitation rights of grandparents.  This Court recognizes grandparent visitation.  However, this case is being remanded back for a hearing on grandparent visitation in which the *Martin* factors, *Martin v. Coop*, 693 So. 2d 912, 916 (Miss. 1997), are to be applied and findings are to be made on the record supporting the visitation granted.

## STATEMENT OF THE CASE

¶2.     On May 31, 2002, Dennis Earl Townes ("Townes") filed a Petition for Writ of Assistance with the Chancery Court of the Second Judicial District of Hinds County, Mississippi, alleging that B.L. Manyfield and Nay Ruth Manyfield (the "Manyfields") wrongfully and unlawfully took custody and possession of Dennis' minor children and refused to return the children to him.

¶3.     On June 12, 2002, the Manyfields filed a Petition for Custody of Minor Children or in the Alternative, for Grandparent Visitation.

¶4.     On July 3, 2002, the Youth Court Division of the First Judicial District of Hinds County, Mississippi entered a Temporary Custody Order awarding temporary custody of the minor children to the Manyfields.

¶5.     On July 22, 2002, the parties filed an Agreed Order of Temporary Visitation, granting Dennis temporary visitation with his children. Dennis was awarded visitation every other week beginning Sunday evenings at 6:00 p.m. through the following Sunday evening at 6:00 p.m.

¶6.     On July 30, 2002, Dennis filed a Counter-Complaint for Custody of Minor Children.

¶7.     On October 16, 2002, a hearing was conducted and the Opinion of the Court was filed on November 20, 2002. Subsequently, on July 30, 2003, an Order was entered awarding Dennis custody of the minor children and granting Manyfield visitation with the minor children. The Order provided that following visitation provision:

> Every first and third weekend of each month beginning at 6:30 p.m. on Friday and ending at 6:30 p.m. on Sunday, beginning Friday, November 29, 2002, unless said weekend should fall on Christmas or Easter weekend, and in that instance the children will spend the holiday in the home of their father, Dennis Townes. This Court orders that Dennis Townes shall transport the children to the Manyfield's house for the visits on the first weekend of each month and shall return to pick up the children at the conclusion of said visit. That on the third weekend of each month, the parties or their designees shall meet at the truck stop near Interstate 55 exit at Durant, Mississippi at the beginning and conclusion of the visitation for the exchange of the children.

¶8.     It is from this Order that Dennis appeals.

**FACTS**

¶9.     On December 5, 1987, Dennis Earl Townes ("Dennis") and Melva Manyfield ("Melva") were married. Four minor children were born to the marriage, namely, Dennis E. Townes, II, born January 22,

1988; Cami M. Townes, born February 24, 1989; Amber Nicole Townes, Born June 21, 1991; and Christopher A. Townes, born June 23, 1992.

¶10.   When Dennis and Melva divorced in 1996, Melva was awarded physical custody of the children. Melva and the four minor children resided with Melva's parents, B.L. and Nay Ruth Manyfield, from 1994 until on or about January 2000.

¶11.   On May 7, 2002, Melva perished in a house fire.  Prevented by the Manyfields from getting his children, Dennis filed a Petition for Writ of Assistance to obtain the control and care of his minor children.

¶12.   At trial, Dennis testified that between 1994 and 1997, he saw the children about three times and had not seen them at all since 1997.  Nevertheless, in awarding custody to Dennis, the trial court stated: "As between [Dennis] and the Manyfields, [Dennis] is entitled to the benefit of the legal presumption that, in the efforts he now professes to be willing to make to rear his children and to provide for them, their best interest is served by reposing custody in him as their sole surviving natural parent."

¶13.   Visitation was granted to the Manyfields.  Dennis lives in Coffeeville, Mississippi. (Yalobusha County), and Mrs. Manyfield lives in Edwards, Mississippi (Hinds County).  B.L. Manyfield is now deceased.

¶14.   Subsequent to the order awarding custody to Dennis, the parties entered into an agreed order in which Dennis relinquished custody of the oldest child, Dennis II, to Mrs. Manyfield.

¶15.   Dennis appeals, raising the issue of whether the conditions of visitation granted by the chancellor to Mrs. Manyfield were excessive.

## ANALYSIS

¶16.   In Mississippi, grandparent visitation is addressed by statute:

Whenever a court of this state enters a decree or order awarding custody of a minor child to one (1) of the parents of the child or terminating the parental rights of one (1) of the parents of a minor child, or whenever one (1) of the parents of a minor child dies, either parent of the child's parents who was not awarded custody or whose parental rights have been terminated or who has died may petition the court in which the decree or order was rendered or, in the case of the death of a parent, petition the chancery court in the county in which the child resides, and seek visitation rights with such child.

Miss. Code Ann. § 93-16-3(1) (Rev. 1994).

¶17.    This Court has set forth ten factors to be considered when determining visitation by grandparents:

1.      The amount of disruption that extensive visitation will have on the child's life. This includes disruption of school activities, summer activities, as well as any disruption that might take place between the natural parent and the child as a result of the child being away from home for extensive lengths of time.

2.      The suitability of the grandparents' home with respect to the amount of supervision received by the child.

3.      The age of the child.

4.      The age, and physical and mental health of the grandparents.

5.      The emotional ties between the grandparents and the grandchild.

6.      The moral fitness of the grandparents.

7.      The distance of the grandparents' home from the child's home.

8.      Any undermining of the parent's general discipline of the child.

9.      Employment of the grandparents and the responsibilities associated with that employment.

10.     The willingness of the grandparents to accept that the rearing of the child is the responsibility of the parent, and that the parent's manner of child rearing is not to be interfered with by the grandparents.

*Martin v. Coop*, 693 So. 2d 912, 916 (Miss. 1997). These ten factors have become known in our cases

as "the *Martin* factors."

¶18. Dennis contends that the trial court's failure to address the *Martin* factors warrants a reversal and remand of the case. This Court has held that "making findings of fact under the *Martin* factors is an integral part of a determination of what is in the best interests of a child." ***T.T.W. v. C.C.***, 839 So. 2d 501, 505 (Miss. 2003).

¶19. Dennis contends that grandparents are not accorded the same right of visitation as a mother or a father. Mrs. Manyfield, however, points out that, in ***Martin***, this Court held "visitation granted to grandparents should not be equivalent to that which would be granted to a non-custodial parent *unless the circumstances overwhelmingly dictate that it should be."* ***Martin***, 693 So. 2d at 916 (emphasis added). Mrs. Manyfield argues that the ***Martin*** factors do not apply because of "overwhelming circumstances" that dictate that granting equal visitation would be in the best interest of the child.

¶20. Absent an abuse of discretion, this Court "will uphold the decision of the chancellor." ***Id.*** at 914. "This Court will not disturb the factual findings of the chancellor unless said factual findings are manifestly wrong or clearly erroneous." ***Id.*** (citing ***McAdory v. McAdory***, 608 So. 2d 695, 699 (Miss. 1992)).


¶21. This Court has held that "the best interest of the child must be the polestar consideration." ***Martin***, 693 So. 2d at 916. "The visitation [granted to a grandparent] should be less than that which would be awarded to a non-custodial parent, unless the circumstances overwhelming dictate that that amount of visitation is in the best interest of the child, and it would be harmful to the child not to grant it." ***Id.***

¶22. Dennis argues that the record does not support a departure from the rule in ***Martin*** and, even if it did, any additional visitation should be summer visitation which would not interfere with the children's studies and his work schedule.

¶23. At the hearing, all four children testified in chambers. Each child indicated a preference to stay with their grandparents. Mrs. Manyfield testified at trial that she and her husband had taken care of the children practically all their lives and had supported them financially. The chancellor stated that "[i]t was obvious to the Court that the children are far more comfortable with and bonded to the Manyfields. They prefer to live with the Manyfields."

¶24. The chancellor stated that "Dennis' failure to offer input in his childrens' lives or even to see them for years at a time is certainly evidence that he was willing to abandon them to Melva. His failure to support them, not only with monetary support but with this (sic) presence, is shameful."

¶25. The chancellor ruled, however, that "[a]s between himself and the Manyfields, Dennis is entitled to the benefit of the legal presumption that, in the efforts he now professes to be willing to make to rear his children and to provide for them, their best interest is served by reposing custody in him as their sole surviving natural parent."

¶26. The chancellor stated that "[i]t is obvious that the children are deeply bonded to the Manyfields, having been effectively reared by them. They should maintain contact with the Manyfields as often as possible, as the parties may agree, and absent specific agreement otherwise, on the following schedule" - every first and third weekend each month.

¶27. Dennis argues that the visitation award, together with his being ordered to transport the children to and from the Manyfields' house on the first weekend and transport them to and from Durant on the third weekend is, excessive. He further contends that the alternating weekend visitation is especially onerous because he is an over-the-road-trucker and the grandparent lives miles away. Dennis contends that having to comply with the visitation schedule would, over the long run, decrease his earning capacity and the loss of income is exacerbated because Mrs. Manyfield has no support obligation as a natural parent would.

6

He further contends that the excessive travel is not in the best interest of the children. The children are progressing academically.[1] All the children are in extra-curricular activities. Nicole is in ballet, Camie played football, and Christopher was to play flag football but could not because the visitation schedule would not allow it. Dennis contends that the excessive travel limits the parent in these endeavors and disrupts the focus of the children.

¶28.    It is very evident that the chancellor weighed heavily the bond that the children have with Mrs. Manyfield. However, the record is devoid of any mention of the *Martin* factors which this Court has set forth to be considered, when determining the amount of visitation that grandparents should be granted.

¶29.    In *T.T.W.*, this Court held that "making findings of fact under the *Martin* factors is an integral part of a determination of what is in the best interest of a child." 839 So. 2d at 505. Therefore, the *Martin* factors are to be applied and discussed in every case in which grandparent visitation is an issue. Furthermore, when a chancellor finds that there are circumstances that "overwhelmingly dictate" that a grandparent should be awarded equivalent visitation to that of a parent, those findings must be fully discussed on the record.

## CONCLUSION

¶30.    The chancellor erred by failing to apply the *Martin* factors and failing to make a finding on the record supporting the visitation awarded. Therefore, we vacate the judgment and remand this case for an on-the-record consideration of the *Martin* factors and the entry of an appropriate judgment based on those factors.

---

[1]While in the custody of Melva, the children were kept out of school for one year. This caused the children to be behind academically. There was testimony at trial that Dennis has them tutored and that they are progressing in school.

¶31. **VACATED AND REMANDED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., CARLSON AND RANDOLPH, JJ., CONCUR.  EASLEY, J., CONCURS IN RESULT ONLY. GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.**